**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

OFF-WHITE LLC.,

                           Plaintiff,

           -against-

ALICARL SERISE STORE et al.

                        Defendants.

-----------------------------------------------------------------X

**21-CV-3630 (PAE) (VF)**

**REPORT AND**
**RECOMMENDATION**

**VALERIE FIGUEREDO, United States Magistrate Judge.**

**TO: THE HONORABLE PAUL A. ENGELMAYER, United States District Judge.**

On April 23, 2021, Plaintiff Off-White LLC ("Off-White") commenced this action

asserting claims against 54 Defendants[1] for trademark counterfeiting, trademark infringement,

infringement of unregistered trademark, false designation of origin, passing off and unfair

competition under the Lanham Act, as well as unfair competition under New York law. See ECF

---

[1] The 54 Defendants are: Alicarl Serise Store, Angshe Store, Be Yeah Store, Beautiful
Customer Store, Dongguan City Shanli Weaving Co. Ltd., Dongguan Gemfits Technology Co.,
Ltd., Dongguan Nuomanshi Clothing Co., Ltd., Dongguan Yihong Webbing Co., Ltd.,
Fashionable Accessories Store, FJXMVIP Store, Flovar Store, Geometric Spacing Store,
Guangzhou Bikson Electronic Technology Co., Ltd., Guangzhou Misheng Technology Co., Ltd.,
Guangzhou Tomas Crafts Co., Limited, Guangzhou YJ Guangzhou YJ Technology Co., Ltd.,
Hangzhou Meikalai Technology Co., Ltd., HYUCENY FF bag666 Store, LBJSOX Store,
LLL89898989 Store, Olivia's colorful Store, Outstandingofficial Store, Shangzhijia Store,
Shenzhen Aishang Sunshine Trading Co., Ltd., Shenzhen Asher Technology Co., Ltd., Shenzhen
Ast Electronic Technology Co., Ltd., Shenzhen Burzion Technology Co., Ltd., Shenzhen
Chengzhou Technology Ltd., Shenzhen Haichengfeng Technology Co., Ltd., Shenzhen Shanen
Electronic Commerce Co., Ltd., Shenzhen Weijiaxing Electronics Co., Ltd., Shenzhen Yetesi
Technology Co., Ltd., Shenzhen Yueyangmeng E-Commerce Co., Ltd., Shop3659058 Store,
Shop5095137 Store, Shop5411028 Store, shop678 Store, Shop910326107 Store,
Shop910327347 Store, Shop910347415 Store, Shop910931048 Store, Shop911112184 Store,
Shop911188155 Store, Shop911305008 Store, Shop911599337 Store, Shop911733072 Store,
WHAT A SURPRISE Store, wowoanimal Store, Xiamen Linjiasheng International Trade Co.,
Ltd., Xi'an Dealspeeds Technology Limited, Xu's Store, Yiwu Dongye E-Business Limited, and
Yiwu Yiyu Tongtian Trade Co. and Ltd.

No. 7 at ¶¶ 43-94. To date, 47 Defendants ("Defaulting Defendants") have not appeared or had the claims against them dismissed. For the reasons set forth below, I respectfully recommend that Off-White be awarded damages under the Lanham Act in the amount of $3,525,000 plus post-judgment interest.

## **BACKGROUND**

### A. Factual Background

Off-White is a limited liability company doing business in New York that sells a "high-end lifestyle streetwear line of men's and women's apparel, as well as accessories, jewelry, homeware, and other ready-made goods." ECF No. 7 at ¶ 7. Defendants are merchants on Alibaba and AliExpress, online marketplace and e-commerce platforms. Id. at ¶ 21.

Off-White products are marketed under the trademarks "Off White" and "Off White C/O Virgil Abloh," as well as through a number of design marks featuring diagonal lines or intersecting dual-sided arrows (collectively, the "Off-White Marks"). Id. at ¶ 8. Since 2013, "the Off-White Diagonal Design has been, and currently still is, applied to the Off-White products themselves, and [as early as] 2016, the Off-White Arrow Design has been, and currently still is, applied to the Off-White [p]roducts themselves. The Off-White Trade Dress is also applied to tags, labels, containers, packaging and displays for the Off-White [p]roducts." Id. As reflected in Off-White's federal trademark registrations, the constructive date of first use is January 25, 2012. Id. at ¶ 13.

Off-White products are sold at luxury retailers such as Selfridges and Bergdorf Goodman, as well as Off-White's boutiques in cities including London, Tokyo, Toronto, and New York City. Id. at ¶ 9. Off-White products have been featured in prominent publications such as *New York Magazine*, *GQ*, and *Vogue*. Id. at ¶ 10. Off-White engages in significant advertising

and marketing efforts on social media, Off-White's own website, retailer websites, and in other internet-based and print mediums in the United States and across the world. Id. at ¶ 15.

Off-White products typically retail for between $150.00 and $2,500.00. Id. at ¶ 11. Off-White attributes its success to "its use of high-quality materials and processes in making the Off-White [p]roducts," as well as its "word of-mouth-buzz that its consumers have generated." Id. at ¶¶ 16-17. These factors have "made the Off-White [p]roducts and Off-White Marks prominently placed in the minds of the public" such that "[r]etailers, retail buyers, consumers, and members of the public have become familiar with the Off-White [p]roducts and Off-White Marks and associate them exclusively with Off-White." Id. at ¶ 18. This has led the Off-White Marks to "acquire[] a valuable reputation and goodwill among the public." Id. at ¶ 19. Absent "express written permission" from Off-White, no one is permitted to "manufacture, import, export, advertise, offer for sale or sell any goods utilizing Off-White Marks." Id. at ¶ 20.

Defendants are a group of "merchants" on the Alibaba and AliExpress online marketplace platforms. Id. at ¶ 21. Alibaba and AliExpress are e-commerce platforms that allow manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their wholesale and retail products originating from China directly to worldwide consumers. Id. Alibaba and AliExpress are two of the leaders of China's e-commerce and digital retail market, with international buyers, including those in the United States, comprising a significant percentage of their business. Id. at ¶ 22.

Through their user accounts and merchant storefronts, the Defaulting Defendants offer for sale and/or sell counterfeit Off-White products on Alibaba and/or Aliexpress, and they ship those products to customers in the United States, including in New York. Id. at ¶¶ 24-25, 29. The Defaulting Defendants have never been authorized to copy, manufacture, import, export,

advertise, distribute, offer for sale or sell Off-White products or use marks that are "confusingly similar" to the Off-White Marks. Id. at ¶ 30. The counterfeit Off-White Products on Defendants' merchant storefronts are "nearly indistinguishable" from Off-White Products. Id. at ¶ 31.

Through counsel, Off-White identified that the Defaulting Defendants offered for sale and/or sold Off-White counterfeit products to a New York shipping address and also verified that each Defaulting Defendant provides shipping to a New York address. Id. at ¶ 32. Off-White also confirmed that each Defaulting Defendant is still currently offering for sale and/or selling Counterfeit Products through their respective User Accounts and/or Merchant Storefronts" on Alibaba or AliExpress and is accepting payment for its Off-White counterfeit products in U.S. dollars. Id. at ¶ 33. The Defaulting Defendants "had knowledge of [Off-White]'s ownership of the Off-White Marks, of the fame and incalculable goodwill associated" with those marks, and "of the popularity and success of the Off-White [p]roducts, and in bad faith adopted the Off-White Marks." Id. at ¶¶ 37-39. Defendants' actions have damaged Off-White by "causing consumers to erroneously believe that" the counterfeit Off-White products sold by the Defaulting Defendants are "licensed by or otherwise associated with" Off-White. Id. at ¶ 40.

## B. Procedural History

On April 23, 2021, Off-White filed the instant action against Defendants asserting five causes of action: (1) trademark counterfeiting under the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d), 1117(b)-(c); (2) trademark infringement under the Lanham Act, 15 U.S.C. § 1114; (3) infringement of unregistered trademark under the Lanham Act, 15 U.S.C. § 1125; false designation of origin, passing off, and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); and (5) unfair competition under New York law. ECF No. 7 at ¶¶ 43-94. Off-White also moved *ex parte* for an order to seal, a temporary restraining order halting any further sale by

Defendants of the counterfeit products, an order restraining Defendants' assets with financial institutions and their merchant storefronts, an order to show cause why a preliminary injunction should not issue, an order authorizing bifurcated and alternative service, and an order authorizing expedited discovery. ECF Nos. 11-13.

On April 23, 2021, the Honorable P. Kevin Castel granted Off-White's *ex parte* applications and entered a temporary restraining order, enjoining Defendants from continuing to sell counterfeit Off-White products on Alibaba and/or AliExpress. ECF No. 14; ECF No. 25 at ¶¶ 9, 11. Judge Castel also directed the parties to appear at a hearing on May 7, 2021, to discuss Off-White's application for a preliminary injunction. ECF No. 14. On April 29, 2021, pursuant to the alternative methods of service authorized by the Court, Off-White served each Defendant, except Defendant Shop 3659058 Store, with the summons and complaint, as well as copies of the temporary restraining order and all papers filed in support of Off-White's application. ECF No. 16 at ¶ 6.

On May 7, 2021, the Court held a hearing to address Off-White's application for a preliminary injunction. ECF Nos. 14-15. No Defendant appeared at the hearing. ECF No. 25 at ¶ 16. That same day, the Court extended the injunctive relief previously granted, requiring that it "remain in place through the pendency of this litigation." ECF No. 6 at 1. On May 13, 2021, Off-White served the preliminary injunction order on each Defendant except Defendant Shop 3659058 Store. ECF No. 17 at ¶ 7. On May 20, 2021, Off-White moved under Federal Rule of Civil Procedure 41 for voluntary dismissal without prejudice of all claims against Defendant Shop 3659058 Store. ECF No. 19. The Court granted the motion on May 21, 2021, dismissing all claims against Shop 3659058 Store. ECF No. 20.

On May 21, 2021, Off-White moved for the entry of default against the 53 remaining

Defendants. ECF Nos. 21, 22. On May 24, 2021, the Clerk of Court entered a Certificate of Default against those Defendants. ECF No. 23. On June 17, 2021, Off-White filed a motion for default judgment against the 53 remaining Defendants. ECF Nos. 24-27. On June 22, 2021, the Court issued an order directing any Defendant who wished to oppose the default judgment motion to file an opposition by July 20, 2021. ECF No. 28. No Defendant filed an opposition to the motion for default judgment.

On July 7, 2021, Off-White moved again under Rule 41 for voluntary dismissal with prejudice of all claims against Defendant Shenzhen Haichengfeng Technology Company. ECF No. 31. The Court granted the motion on July 8, 2021. ECF No. 32. On July 19, 2021, Off-White moved to dismiss all claims against Defendants Dongguan City Shanli Weaving Company, Dongguan Yihong Webbing Company, and Shenzhen Weijiaxing Electronics Company. ECF No. 33. The Court granted the motion on July 20, 2021. ECF No. 34. On October 14, 2021, Off-White moved to dismiss all claims against Defendant Shenzhen Asher Technology Company. ECF No. 35. The Court granted the motion on October 19, 2021. ECF No. 36.

On December 6, 2021, the Court directed Off-White to submit Proposed Findings of Fact and Conclusions of Law in support of an award of damages. ECF No. 38 at ¶ 1. Off-White filed its Proposed Findings of Fact and Conclusions of Law on January 5, 2022. ECF Nos. 40-43. The Defaulting Defendants were given until February 4, 2022 to submit a response to Off White's Proposed Findings of Fact and Conclusions of Law. ECF No. 38 at ¶ 4. The Defaulting Defendants failed to provide any response to Off-White's submission. To date, none of the Defaulting Defendants have appeared in this case.

On January 28, 2022, Off-White moved under Rule 41 for voluntary dismissal of all claims against Defendant Guangzhou Tomas Crafts Company. ECF No. 44. The Court granted

the motion on January 31, 2022. ECF No. 45.

On March 22, 2022, the Court entered a default judgment against the 47 Defaulting Defendants.[2] ECF No. 46 at 3. On March 22, 2022, Off-White served the Court's default judgment order on the Defaulting Defendants, except for Defendants Guangzhou YJ Technology Co., HYUCENY FF bag666 Store, and Shenzhen Ast Electronic Technology Co. ECF No. 47 at ¶ 5. Subsequently, Off-White was able to serve the default judgment papers on HYUCENY FF bag666 Store.[3] See ECF No. 50 at ¶ 8. On April 30, 2022, the Court referred this case to the

---

[2] The 47 Defaulting Defendants are: AliCarl Serise Store, Angshe Store, Be Yeah Store, beautiful customer Store, Dongguan Gemfits Technology Co., Ltd., Dongguan Nuomanshi Clothing Co., Ltd., Fashionable accessories Store, FJXMVIP Store, FLOVAR Store, Geometric spacing Store, Guangzhou Bikson Electronic Technology Co., Ltd., Guangzhou Misheng Technology Co., Ltd., Guangzhou Tomas Crafts Co., Limited, Guangzhou YJ Technology Co., LTd., Hangzhou Meikalai Technology Co., Ltd., HYCENY FF bag666 Store, LBJSOX Store, LLL89898989 Store, Olivia's colorful Store, Outstandingofficial Store, Shangzhijia Store, Zhenzhen Aishang Sunshine Trading Co., Ltd., Shenzhen Ast Electronic Technology Co. Ltd., Shenzhen Burzion Technology Co., Ltd., Shenzhen Chengzhou Technology Ltd., Shenzhen Shanen Electronic Commerce Co. Ltd., Shenzhen Yetesi Technology Co. Ltd., Shenzhen Yueyangmeng E-Commerce Co., Ltd., Shop5095137 Store, Shop 5411028 Store, shop678 Store, Shop910326107 Store, Shop 910327347 Store, Shop 910347415 Store, Shop 910931048 Store, Shop91112184 Store, Shop911188155 Store, Shop911305008 Store, Shop911599337 Store, Shop911733072 Store, WHAT A SURPRISE Store, wowoanimal Store, Xiamen Linjiasheng International Trade Co., Ltd., Xi'an Dealspeeds Technology Limited, Xu's Store, Yiwu Dongye E-Business Limited, and Yiwu Yiyu Tongtian Trade Co. and Ltd.

[3] Although Off-White was unsuccessful in serving the default judgment papers on Defaulting Defendants Guangzhou YJ Technology Co. and Shenzhen Ast Electronic Technology Co., courts in this District have issued a default judgment where the defaulting defendant was properly served with the summons and complaint. See, e.g., AKF, Inc. v. Arnold Brothers Forest Prods., Inc., No. 20-CV-7708 (GBD) (BCM), 2023 WL 5310243, at *4 (S.D.N.Y. Apr. 28, 2023) (recommending default judgment where defendant was served with summons and compliant but was not served with order to show cause or papers supporting default judgment); see also Moskovitz v. La Suisse, No. 06-CV-4404 (CM), 2013 WL 6197163, at *3 (S.D.N.Y. Nov. 25, 2013) (noting that where the defaulted party was served with process but never appeared, "the Federal Rules don't require that a default judgment [or the papers in support of the motion] be served on him at all"). Because Guangzhou YJ Technology Co. and Shenzhen Ast Electronic Technology Co. were properly served with the summons and complaint (see ECF No. 16), Off-White is entitled to a default judgment and award of damages if liability and damages are established, as discussed herein. See Rove LLC v. Antonio168, No. 20-CV-2124 (ALC), 2023

undersigned for an inquest on damages. See Minute Entry, dated April 30, 2022.

## DISCUSSION

### A.  Legal Standard

Rule 55 of the Federal Rules of Civil Procedure governs judgments against a party that has failed to plead or otherwise defend itself in an action. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65-66 (2d Cir. 1981). Rule 55 requires a two-step process for an entry of a default judgment. See Priestley v. Headminder, Inc., 647 F.3d 497, 504-05 (2d Cir. 2011) (per curiam); Pac. M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 392-93 (S.D.N.Y. 2012). First, upon notification from the moving party, the Clerk of Court enters the default of the party failing to plead or otherwise defend the moving party's suit. See Priestley, 647 F.3d at 504-05 (citing Fed. R. Civ. P. 55(a)). Second, once the clerk issues a certificate of default, the moving party may apply for the entry of a default judgment pursuant to Rule 55(b). Id. at 505.

A default constitutes an admission of all well-pled factual allegations in the complaint. Thus, a plaintiff's allegations in the complaint, as they pertain to liability, are deemed true. See Finkel v. Romanowicz, 577 F.3d 79, 83 n.6 (2d Cir. 2009) (noting that an entry of default establishes liability but does not constitute an admission of damages); Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993) (explaining that "factual allegations are taken as true in light of the general default judgment"). However, a plaintiff is not entitled to a default judgment as a matter of right merely because the opposing party is in default. See Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 187 (2d Cir. 2015). A plaintiff bears the burden of demonstrating that their uncontroverted allegations are

---

WL 6796034, at *n.4 (S.D.N.Y. Oct. 13, 2023) (awarding default judgment against two defendants who were not served default judgment papers but were properly served the summons and complaint).

sufficient to establish a defendant's liability as to each cause of action. Id.; see also Morales v. Mw Bronx, Inc., No. 15-CV-6296 (TPG), 2016 WL 4084159, at *4 (S.D.N.Y. Aug. 1, 2016) (collecting cases).

As to damages, Federal Rule of Civil Procedure 55(b)(2) "allows but does not require" the district court to conduct a hearing on the damages amount. Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund, 779 F.3d at 189 ("[T]he court may conduct such hearings or order such references as it deems necessary and proper.") (internal quotation marks and citation omitted); see also Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012). Additionally, although well-pleaded allegations as to liability are deemed admitted by a defaulting defendant, the same is not true for damages. See Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. LLC, 665 F. Supp. 2d 434, 436 (S.D.N.Y. 2009) ("When the Court enters a default judgment, as regards liability it must accept as true all of the factual allegations of the complaint, but the amount of damages are not deemed true.") (internal citation and quotation marks omitted). Off-White bears the burden of establishing an evidentiary basis for the damages sought against the Defaulting Defendants. See Bricklayers and Allied Craftworkers Local 2, Albany N.Y. Pension Fund, 799 F.3d at 189; Int'l Ass'n of Heat & Frost Insulators v. Affiliated Envtl. Servs. NJ, Inc., No. 15-CV-6909 (LTS), 2017 WL 5153565, at *5 (S.D.N.Y. Nov. 6, 2017). Furthermore, "[w]here a plaintiff seeks damages on the theory that each individual acting alone infringed a work, rather than joint and severally, a court must assess damages with respect to each individual defendant such that the rights of the Defaulting Defendants are not compromised by the virtue of their being joined in the same action." Spin Master Ltd. v. 158, 463 F. Supp. 3d 348, 370

(S.D.N.Y. 2020), <u>adhered to in part on reconsideration by</u>, No. 18-CV-01774 (LJL), 2020 WL

5350541 (S.D.N.Y. Sept. 4, 2020) (citation omitted).

 Here, Off-White's submissions have not been contested, and the submissions provide all

the information needed to determine damages. As such, a hearing on damages is not necessary.

 **B. <u>Personal Jurisdiction</u>**

 As a preliminary matter, it is necessary to determine whether the Court has personal

jurisdiction over the Defaulting Defendants, all of whom are alleged to be located in China. ECF

No. 7 at ¶ 24. Although the Court exercised personal jurisdiction over the Defaulting Defendants

when it issued the TRO and the preliminary injunction, "it is appropriate for the Court to assure

itself that it has personal jurisdiction over those defendants it purports to bind indefinitely" by

issuance of a default judgment. <u>Spin Master Ltd.</u>, 463 F. Supp. 3d at 361 (citing <u>Sinoying</u>

<u>Logistics Pte Ltd. v. Yi Da Xin Trading Corp.</u>, 619 F.3d 207, 213 (2d Cir. 2010)).

 In cases raising a federal claim, where the statute does not provide for nationwide service,

the personal jurisdiction rules of the forum state apply. <u>See, e.g.</u>, Schentag v. Nebgen, No. 17-

CV-08734 (GHW), 2018 WL 3104092, at *15 (S.D.N.Y. June 21, 2018) (citing <u>PDK Labs, Inc.</u>

<u>v. Friedlander</u>, 103 F.3d 1105, 1108 (2d Cir. 1997)). New York's personal jurisdiction rules

apply here because the Lanham Act does not provide for nationwide service. See <u>Alibaba Grp.</u>

<u>Holding Ltd. v. Alibabacoin Foundation</u>, No. 18-CV-2897 (JPO), 2018 WL 2022626, at *6

(S.D.N.Y. Apr. 30, 2018).

 In New York, a court engages in a two-step analysis to determine whether there is

personal jurisdiction over a non-domiciliary in a trademark or copyright case. <u>Spin Master Ltd.</u>,

463 F. Supp. 3d at 362. At step one, the court applies New York's long-arm statute, and at step

two, which takes place only if the long-arm statute permits personal jurisdiction, the court

analyzes "whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010).

Off-White asserts that there is personal jurisdiction over each Defaulting Defendant pursuant to C.P.L.R. § 302(a)(1) and (a)(3). See ECF No. 7 at ¶ 3. Under C.P.L.R. § 302(a)(1), "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . .  transacts any business within the state or contracts anywhere to supply goods or services in the state[.]" Two requirements must be met to establish personal jurisdiction under § 302(a)(1): "(1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." Eades v. Kennedy, PC Law Offs., 799 F.3d 161, 168 (2d Cir. 2015) (quoting Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 168 (2d Cir. 2013)).

A foreign defendant, like the Defaulting Defendants, does not need to be physically present in the forum state, but must engage in a "purposeful activity" through which the foreign defendant "purposefully avail[s] [themself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958). A "'single act' of selling counterfeit goods into New York satisfies" the requirement of C.P.L.R. § 302(a)(1). Chloe, 616 F.3d at 170 (internal quotation omitted). Additionally, a "website's interactivity may be useful for analyzing personal jurisdiction insofar as it helps to decide whether the defendant transacts any business in New York" under § 302(a)(1). Id. (citing Best Van Lines, Inc., 490 F.3d at 252 (internal quotations omitted).

As alleged in the complaint, the Defaulting Defendants used the e-commerce platforms of

Alibaba and/or AliExpress to sell counterfeit Off-White products to consumers in New York. ECF No. 7 at ¶¶ 33-37. The complaint alleges that the Defaulting Defendants were selling, or attempting to sell, counterfeit Off-White products on their merchant storefronts to consumers in New York. Id. at ¶¶ 3.a., 3.c., 3.d., 32-33. Off-White substantiated this allegation by submitting at least three documents for each Defaulting Defendant: (1) a screenshot of the infringing listing for each Defaulting Defendant, which displayed a particular counterfeit Off-White product; (2) a screenshot of the Defaulting Defendant's storefront; and (3) a photograph of the checkout page for the counterfeit Off-White product, showing confirmation that the product can be shipped to the New York address of Off-White's counsel. See e.g., ECF No. 7 at ¶ 33; ECF No. 7-3 at 1-7. These screenshots from the websites of Alibaba and/or AliExpress tie each Defaulting Defendant to a specific counterfeit Off-White product and to the sale and/or attempted sale of that counterfeit product to a consumer in New York. ECF No. 7 at ¶ 33.

The single act of shipping a counterfeit product into New York is sufficient to establish jurisdiction over the Defaulting Defendants, and Off-White has confirmed that the Defaulting Defendants sold and/or offered for sale counterfeit Off-White products on the online marketplaces Alibaba and/or AliExpress. ECF No. 7 at ¶¶ 3, 25, 32-33; ECF Nos. 7-3, 7-4, 7-5, 7-6. See Kelly Toy Holdings, LLC v. Baoding Mi Xiaomei Trading Co., Ltd., No. 21-CV-6029 (LGS) (SLC), 2022 WL 6246622, at *5 (S.D.N.Y. July 18, 2022), report and recommendation adopted by, 2022 WL 4298730 (S.D.N.Y. Sept. 19, 2022) (finding that personal jurisdiction existed over foreign defendants where evidence showed that defaulting defendants had offered for sale counterfeit products on e-commerce sites Alibaba and AliExpress); Off-White LLC v. 5HK5584, No. 19-CV-00672 (RA) (JLC), 2020 WL 1646692, at *4 (S.D.N.Y. Apr. 3, 2020), report and recommendation adopted by, 2020 WL 3050552 (S.D.N.Y. June 8, 2020) (finding

12

personal jurisdiction over foreign defendants because "New York customers are able to order goods for delivery" in New York on eBay.com).

Even for a Defaulting Defendant that never made an actual sale to a New York consumer, Off-White has shown that each Defaulting Defendant offered the counterfeit Off-White product for sale on Alibaba and/or AliExpress to a New York consumer, and courts in this District have found that sufficient to demonstrate purposeful availment by a defaulting defendant of the privileges of conducting activities in New York. See, e.g., WowWee Grp. Ltd. v. Meirly, No. 18-CV-706 (AJN), 2019 WL 1375470, at *4 (S.D.N.Y. Mar. 27, 2019); Pinkfong Co. v. 7 Day Store, No. 22-CV-4133 (PAE) (JLC), 2023 WL 7274684 (S.D.N.Y. Nov. 2, 2023) (adopting R&R finding personal jurisdiction where defaulting defendant offered for sale counterfeit product to New York consumers on e-commerce websites). Moreover, Alibaba and AliExpress are the types of "interactive" e-commerce site upon which a finding of personal jurisdiction may be based. See, e.g., KAWS v. Individuals, Corporations, Limited Liability Companies, Partnerships, & Unincorporated Associations Identified on Schedule A Hereto, No. 22-CV-6721 (AKH), 2023 WL 1438637, at *2-3 (S.D.N.Y. Feb. 1, 2023). Finally, the sale of counterfeit trademarks is prohibited under the Lanham Act, 15 U.S.C. § 1114(1)(a)-(b), and consequently the Defaulting Defendants' "business transaction"—the offer and/or sale of the counterfeit products in New York—has a substantial relationship with the claim asserted in this action. Spin Master Ltd., 463 F. Supp. 3d at 364. In short, because each Defaulting Defendant sells and/or offers to sell to New York consumers on an interactive e-commerce website, the Court has personal jurisdiction under § 302(a)(1) over each Defaulting Defendant.

Additionally, the assertion of personal jurisdiction over the Defaulting Defendants comports with due process, because the Defaulting Defendants "regularly conduct, transact

and/or solicit business in New York, and/or derive substantial revenue from their business transactions in New York." ECF No. 7 at ¶ 3. Due process requires "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Washington Office of Unemployment Compensation & Placement, 326 U.S. 310, 316 (1945) (quotation omitted). This standard is satisfied without further inquiry by state long-arm statutes, like C.P.L.R. 302, that permit the exercise of jurisdiction in a narrower range of circumstances than the Due Process Clause. Energy Brands Inc. v. Spiritual Brands, Inc., 571 F. Supp. 2d 458, 469 (S.D.N.Y. 2008). Accordingly, for the reasons discussed, the Court has personal jurisdiction over the Defaulting Defendants.

### C.  Liability

Off-White seeks damages only in connection with its claims under the Lanham Act brought under Counts I and II of the complaint. ECF No. 25 at 2 n.2. Therefore, "the Court considers the Defaulting Defendants' liability as to their violation of the Lanham Act alone." 5HK5584, 2020 WL 1646692, at *4; see also Coach Servs., Inc. v. K Ya Int'l Inc., No. 09-CV-4656 (RMB) (JCF), 2010 WL 2771897, at *2 (S.D.N.Y. June 10, 2010), report and recommendation adopted by, 2010 WL 2771907 (S.D.N.Y. July 12, 2010) ("In connection with this inquest, the plaintiff has requested damages only for trademark infringements in violation of the Lanham Act, and therefore liability need only be considered with respect to that claim.").

"The Lanham Act imposes liability on any person who, in connection with the sale, offering for sale, or distribution of a good, either uses a counterfeit of a registered mark or counterfeits such mark in advertising or packaging materials, when such use is likely to cause confusion." Allstar Mktg. Grp., LLC v. 123 Beads Store, No. 19-CV-3184 (AJN), 2020 WL

14

5836423, at *3 (S.D.N.Y. Sept. 30, 2020) (citing 15 U.S.C. §§ 1114(1)(a)-(b), 1125). To prevail on a Lanham Act trademark counterfeiting or infringement claim, a plaintiff must establish that the infringed mark is valid and "entitled to protection," and that "use of the allegedly infringing mark 'is likely to cause consumer confusion as to the origin or sponsorship' of the products to which it attached." Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 168 (2d Cir. 2016) (quoting Virgin Enters. Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003)). A certificate of registration with the Patent and Trademark Office "is prima facie evidence that the mark is registered and valid (*i.e.* protectible)[.]" Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 345 (2d Cir. 1999).

Additionally, a plaintiff can establish consumer confusion through the factors laid out in Polaroid v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961). However, a court "need not undertake a factor-by-factor analysis under Polaroid" in the case of counterfeits "because counterfeits, by their very nature, cause confusion." Gucci Am., Inc. v. Duty Free Apparel, Ltd., 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003); see also Coach, Inc. v. Horizon Trading USA, Inc., 908 F. Supp. 2d 426, 433 (S.D.N.Y. 2012); Spin Master, Ltd., 463 F. Supp. 3d at 368. The Lanham Act defines "counterfeit" as a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

Off-White has established both elements of a trademark counterfeiting and infringement claim as to the Defaulting Defendants. First, Off-White alleges that it is the owner of 22 U.S. Trademark Registrations for certain "Off-White Marks" that are currently in use in commerce in connection with Off-White products. ECF No. 7 at ¶¶ 12-13. Annexed to the complaint, Off-White has included a copy of the U.S. Patent and Trademark Office's registration certificates for its registered Off-White Marks.  ECF No. 7-2 at 1-33. "A certificate of registration with the

Patent and Trademark Office is prima facie evidence that the mark is registered and valid (*i.e.*, protectible), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." Coach, Inc., 908 F. Supp. 3d at 433 (quoting Lane Capital Mgmt., Inc. 192 F.3d at 345).

Second, Off-White has established that the marks on the counterfeit products sold by the Defaulting Defendants are likely to cause confusion because they are demonstrably counterfeit. Counterfeit products, by their nature, are likely to cause confusion. See e.g., BTL Industries, Inc. v. Versalini Beauty & Spa Salon, No. 23-CV-8617 (LJL), 2024 WL 3342293, at *4-5 (S.D.N.Y. July 8, 2024); Kelly Toys Holdings, LLC v. Airpods Pro Store, No. 21-CV-8435 (LJL), 2022 WL 2801077, at *4 (S.D.N.Y. July 18, 2022). And here, Off-White alleges that the Defaulting Defendants are offering for sale and/or selling counterfeit products bearing the Off-White Marks. ECF No. 7 at ¶¶ 25-26, 34-37. Moreover, the complaint includes side-by-side images of an Off-White product and the counterfeit Off-White product that is offered for sale by each of the Defaulting Defendants. ECF No. 7 at ¶¶ 34-36. The examples of the counterfeit products sold by the Defaulting Defendants bear a mark that is "confusingly similar" to the protected Off-White Mark. See, e.g., ECF No. 7 at ¶¶ 34-36; see also ECF Nos. 7-3, 7-4, 7-5, 7-6. Accepting Off-White's allegations in the complaint as true, the counterfeit products offered for sale by the Defaulting Defendants are "virtually identical to one of [Off-White's] products and incorporate copies or colorable imitations of marks on their product packaging[.]" WowWee Grp. Ltd. v. Meirly, No. 18-CV-706 (AJN), 2019 WL 1375470, at *7 (S.D.N.Y. Mar. 27, 2019). As such, Off-White has established its trademark counterfeiting and infringement claims against the Defaulting Defendants in Counts I and II of the complaint. Default judgment as to those claims is thus warranted.

16

### D. **Damages**

1. Statutory Damages

Off-White requests statutory damages totaling $3,525,000, or $75,000 for each of the 47 Defaulting Defendants. ECF No. 42 at 1. Off-White seeks only statutory damages because, due to the Defaulting Defendants' failure to appear in this case, Off-White has been "deprived of the ability to prove a specific amount of actual damages." Id. at 7.

Under the Lanham Act, at any time before final judgment is entered, a trademark owner may elect to recover an award of statutory damages, rather than actual damages, in cases of infringement. 15 U.S.C. § 1117(c)-(d); see also Off-White v. Ali Jr., No. 19-CV-1775 (PAE) (SN), 2021 WL 11643206, at *8 (S.D.N.Y. July 23, 2021), report and recommendation adopted by, 2021 WL 3914077 (S.D.N.Y. Sept. 1, 2021). For the use of a counterfeit mark, a court may award statutory damages in the amount of: (1) "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just," or (2) if the use of the counterfeit mark is found to be willful, up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c); see also All-Star Mktg. Grp., LLC v. Media Brands Co., Ltd., 775 F. Supp. 2d 613, 620-21 (S.D.N.Y. 2011) ("The rationale for § 1117(c) is the practical inability to determine profits or sales made by counterfeiters.").

Although 15 U.S.C. § 1117(c) instructs courts to award a "just" amount and establishes a cap on the award, it "does not provide guidelines for courts to use in determining an appropriate award as it is only limited by what the court considers just." Gucci Am., Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) (internal citation and quotation marks omitted). Accordingly, "courts in this District have looked to the analogous provision in the Copyright Act for guidance, 17 U.S.C. § 504(c), and have considered" the following factors in

determining an appropriate amount of statutory damages: (1) "the expenses saved and the profits reaped"; (2) "the revenues lost by the plaintiff"; (3) "the value of the copyright"; (4) "the deterrent effect on others besides the defendant"; (5) "whether the defendant's conduct was innocent or willful"; (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced"; and (7) "the potential for discouraging the defendant." 5HK5584, 2020 WL 1646692, at *6 (citing Philip Morris USA Inc. v. A&V Minimarket, Inc., 592 F. Supp. 2d 669, 673 (S.D.N.Y. 2009)). A court has broad discretion to balance the factors in determining an appropriate statutory damages award. Louis Vuitton Malletier S.A. v. LY USA, Inc., 472 F. App'x 19, 22 (2d Cir. 2012) ("Within these statutory limits courts have considerably broad discretion to balance the punitive, deterrent function of an award against the direction that it not constitute a windfall for prevailing plaintiffs.") (internal quotation marks and citation omitted).

The analysis of the first and second factors is identical for each Defaulting Defendant and both factors weigh in favor of Off-White. The full extent of the profits reaped by the Defaulting Defendants and the revenue lost by Off-White as a result of the infringing activity of each Defaulting Defendant is unknown. ECF No. 25 at ¶ 24. As a result of the failure of each defendant to appear, Off-White was "deprived of the ability to prove a specific amount of actual damages." Id. at ¶ 25. The effect of the default is that the Defaulting Defendants have not responded to the evidence of counterfeit sales with evidence of their own, such as expenses incurred that might reduce a damages award. See Sara Lee Corp. v. Bags of New York, Inc., 36 F. Supp. 2d 161, 168-69 (S.D.N.Y. 1999); see also Louis Vuitton S.A. v. Spencer Handbags Corp., 765 F.2d 966, 973 (2d Cir. 1985) ("Where the defendants fail to produce evidence to refute plaintiffs' evidence of defendants' sales of counterfeit products, the court must rely on less

certain methods of proof."). In situations such as this, courts generally "resolve[] any uncertainty" in favor of the plaintiff with respect to the first two factors "so as not to allow the Defaulting Defendants to benefit from their lack of participation in this litigation." Ideavillage Products Corp. v. Aarhus, No. 18-CV-02739 (JGK) (SDA), 2019 WL 2290514, at *7 (S.D.N.Y. May 7, 2019), report and recommendation adopted by, 2019 WL 2287726 (S.D.N.Y. May 28, 2019).

The third factor—which examines the value of the trademark—also weighs in favor of Off-White. Off-White has not submitted evidence supporting a particular monetary value for its trademark. However, courts can "infer from the well-known reputations of most or all of the trademarks and the sea of advertising that presses them on the consciousness of the buying public that they are indeed valuable." Polo Ralph Lauren v. 3M Trading Co., No. 97-CV-4824 (JSM) (MH), 1999 WL 33740332, at *6 (S.D.N.Y. Apr. 19, 1999). Here, the evidence shows that Off-White's Marks are valuable. At the time the complaint was filed, Off-White was the owner of a "young, successful and high-end lifestyle streetwear line of men's and women's apparel[.]" ECF No. 7 at ¶ 7. Off-White sells a wide range of products bearing the Off-White Marks, including accessories, jewelry, homeware, and other ready-made goods. Id. These sales occur through luxury retailers, and Off White's products are featured in prominent publications. Id. at ¶¶ 9-10. Additionally, Off-White has put considerable effort into marketing and promotional efforts related to these products, utilizing both internet-based and print advertising. Id. at ¶ 15. Off-White's marketing, promotions, and distribution, as well as the quality of its products and the "word-of-mouth buzz generated by its consumers," has resulted in its products acquiring "a valuable reputation and goodwill among the public." Id. at ¶¶ 18-19.

The fourth factor examines the scale of the Defaulting Defendants' infringement. The

scale of infringement is greatly heightened in the case of online counterfeiting, because online marketplaces like Alibaba or AliExpress provide a "'virtually limitless number of customers' for the counterfeit products." Kelly Toys Holdings LLC, 2022 WL 2801077, at *7 (quoting Streamlight Inc. v. Gindi, No. 18-CV-987 (NG), 2019 WL 6733022 at *13 (E.D.N.Y. Oct. 1, 2019), report and recommendation adopted by, 2019 WL 6726152 (E.D.N.Y. Dec. 11, 2019)); see also Rolex Watch, U.S.A., Inc. v. Pharel, No. 9-CV-4810 (RRM) (ALC), 2011 WL 1131401, at *5 (E.D.N.Y. Mar. 11, 2011), report and recommendation adopted by, 2011 WL 1130457 (E.D.N.Y. Mar. 28, 2011) (finding that the use of three websites by defendants to sell counterfeit products counseled in favor of the fourth factor); Golden Goose Deluxe Brand v. Aadct Official Store, No. 19-CV-2521 (VSB) (GWG), 2020 WL 3167031, at *4 (S.D.N.Y. June 15, 2020), report and recommendation adopted by, 2020 WL 6157012 (S.D.N.Y. Oct. 21, 2020) (finding that defaulting defendants who offered goods on Alibaba could reach a "vast customer base") (internal citation and quotation omitted). "'Courts have supported an inference of a broad scope of operations in cases dealing specifically with websites that ship and sell to a wide geographic range,'" such as the Alibaba and AliExpress platforms used by the Defaulting Defendants. WowWee Grp. Ltd., 2019 WL 1375470, at *10 (quoting Spin Master v. Alan Yuan's Store, 325 F. Supp. 3d 413, 426 (S.D.N.Y. 2018)). The fact that these sales occurred on such platforms that permit nationwide sales, combined with the general "need to deter other possible infringers," ultimately weighs in favor of an award to Off-White. Id.

The fifth factor—willfulness—also weighs in favor of Off-White. "An infringement is willful where the defendant had knowledge or recklessly disregarded the possibility that its actions constituted infringement." Spin Master Ltd. 463 F. Supp. 3d at 374 (quoting Streamlight, 2019 WL 6733022, at *13.) Because the Defaulting Defendants did not appear to defend this

action, their infringement is "*per se* willful." <u>Ali Jr.</u>, 2021 WL 11643206, at *9 (internal

quotation omitted). In addition, the "use of marks that are 'virtually identical' to the registered

marks renders 'inescapable' the conclusion that the defendant's infringement and counterfeiting

was intentional." <u>WowWee Grp.</u>, 2019 WL 1375470, at *10 (quoting <u>Coach, Inc. v. Melendez</u>,

No. 10-CV-6178 (BSJ) (HSP), 2011 4542971, at *5 (S.D.N.Y. Sept. 2, 2011), <u>report and</u>

<u>recommendation adopted by</u>, 2011 WL 4542717 (S.D.N.Y. Sept. 30, 2011)). As discussed, the

marks on the counterfeit products here are virtually indistinguishable from the Off-White Marks.

ECF No. 7 at ¶¶ 34-37. This factor therefore weighs in Off-White's favor.

      The sixth factor measures the degree of cooperation by the Defaulting Defendants. Some

courts look to whether the defendant has engaged in an "[a]ctive effort to mislead the court about

continued willful counterfeiting," which "is a traditional aggravating factor in statutory

damages[.]" <u>Sara Lee Corp.</u>, 36 F. Supp. 2d at 168. Other courts have "construe[d] this element

against defendants who fail to answer or appear, thus preventing the exchange of comprehensive

discovery." <u>Streamlight</u>, 2019 WL 6733022, at *14. In general, "it is more appropriate to look to

whether the defendant has engaged in an effort to conceal the fact or scale of its wrongdoing or

to mislead the plaintiff or the court about the existence or scale of counterfeiting." <u>Kelly Toys</u>

<u>Holdings, LLC</u>, 2022 WL 2801077, at *7 (citing <u>Spin Master</u>, 463 F. Supp. 3d at 374). In this

case, the factor of "cooperation is neutral." <u>Id</u>. Off-White alleges that "Defendants are in

constant communication with each other and regularly participate in online chatroom discussions

involving illegal counterfeiting activities, pending litigation and potential new lawsuits." ECF

No. 7 at ¶ 27. This allegation, however, does not demonstrate that "Defendants took active steps

to conceal their identities or to avoid detection, nor [has Off-White] presented evidence

(including in the form of an expert affidavit) that would support that conclusion." <u>Kelly Toys</u>

Holdings, LLC, 2022 WL 2801077, at *7. On the current record, this factor does not support a heightened damages award for Off-White. See Ali Jr., 2021 WL 11643206, at *10.

The seventh and final factor is the potential for deterring the Defaulting Defendants. See Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 125 (S.D.N.Y. 2003); see also Bumble and Bumble, LLC v. Pro's Choice Beauty Care, Inc., No. 14-CV-6911 (VEC) (JLC), 2016 WL 658310, at *5 (S.D.N.Y. Feb. 17, 2016), report and recommendation adopted by, 2016 WL 1717215 (S.D.N.Y. Apr. 27, 2016) (explaining that an award of statutory damages will serve as a "specific deterrent" to the defendants as well as a "general deterrent to others who might consider engaging in infringing conduct in the future"). This factor considers the need for deterrence and the nature of the defendant's conduct. See Ali Jr., 2021 WL 11643206, at *10. With counterfeit goods, such as the goods at issue here, the "need to deter. . . is particularly compelling[.]" Bumble and Bumble, LLC, 2016 WL 658310, at *5. The Defaulting Defendants have used a mark on their products that is identical, if not substantially indistinguishable, to the Off-White Marks. ECF No. 7 at ¶¶ 34-37. And, given the fame of the Off-White Marks, Defendants knowingly used a counterfeit mark on their products. Id. at ¶¶ 9-11. This factor therefore also weighs in Off-White's favor. See Moonbug Ent. Ltd. v. All Night Revelry Store, No. 21-CV-10315 (LGS)(JLC), 2023 WL 116565, at *6 (S.D.N.Y. Jan. 6, 2023), report and recommendation adopted by, 2023 WL 1402072 (S.D.N.Y. Jan. 31, 2023) (finding this factor in plaintiff's favor where defaulting defendants engaged in willful counterfeiting).

Off-White seeks statutory damages under the Lanham Act of $75,000 for each Defaulting Defendant. Such an award falls within the range of awards granted by courts in this District in similar circumstances. See Off-White LLC v. adagio, No. 19-CV-676 (RA) (JLC), 2020 WL 1646673, at *7-8 (S.D.N.Y. Apr. 3, 2020), report and recommendation adopted as modified by,

2020 WL 3050383 (S.D.N.Y. June 8, 2020) (awarding $100,000 per defaulting defendant where defendants engaged in counterfeiting and failed to participate in the litigation thereby depriving "Off-White of any records from which to assess the value of the infringing materials"); Off-White LLC v. ^_^Warm House^_^ Store, No. 17-CV-8872 (GBD) (GWG), 2018 WL 4927905, at *5 (S.D.N.Y. Oct. 11, 2018), report and recommendation adopted in part by, 2019 WL 418501 (S.D.N.Y. Jan. 17, 2019) (awarding Off-White $100,000 per defaulting defendant engaged in trademark infringement where no records were available to assess the value of defendants' infringement); Palace Skateboards Grp. v. Glob. Outlet Store, Nos. 20-CV-6103 (GBD) (SN), 2024 WL 4534668, at *5 (S.D.N.Y. Sept. 6, 2024) (awarding $75,000 in damages per defendant where defaulting defendants engaged in online counterfeiting and "have not cooperated or provided any records"); Golden Goose S.P.A. v. Adashoe001, No. 20-CV-2122 (PKC), 2020 WL 5569583, at *3 (S.D.N.Y. Sept. 16, 2020) (awarding $75,000 against each defaulting defendant engaged in trademark infringement given "the difficulty in ascertaining actual damages in light of defendants' failure to appear"). Accordingly, I respectfully recommend that Off-White be awarded statutory damages in the amount of $75,000 for each of the 47 Defaulting Defendants, for a total statutory damages award of $3,525,000.

   2. Post-Judgment Interest

  Off-White also seeks post-judgment interest on any damages award. ECF No. 40 at Conclusion. "Post-judgment interest is awarded on any money judgment recovered in a civil case." Alan Yuan's Store, 325 F. Supp. 3d at 426 (citing 28 U.S.C. § 1961). Post-judgment interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, . . . for the calendar week preceding[] the date of judgment." 28 U.S.C. § 1961(a). Accordingly, I respectfully recommend that Off-White be awarded post-

judgment interest in an amount to be determined according to the statutory formula set forth in 28 U.S.C. § 1961.

      3.   <u>Asset Freeze and Transfer</u>

Finally, Off-White seeks an order extending the pre-judgment freeze on Defaulting Defendants' assets, a transfer of those assets to Off-White, and post-judgment interest on Defaulting Defendants' frozen assets. ECF No. 26 at 14-23. Off-White argues that the Court has the authority to enter the continued freeze and transfer order as to the Defaulting Defendants' assets under Rule 64 of the Federal Rules of Civil Procedure, 15 U.S.C. § 1116(a), and the Court's inherent equitable power, or, in the alternative, pursuant to N.Y. C.P.L.R. § 5225, while also allowing Off-White to serve a restraining notice on third-party financial services providers involved with Defaulting Defendants pursuant to C.P.L.R. § 5222. ECF No. 26 at 14-23.

Rule 64 of the Federal Rules of Civil Procedure provides that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." In New York, Section 5225 of the New York Civil Practice Law and Rules authorizes a court to compel a nonparty to surrender a judgment debtor's property. N.Y. C.P.L.R. § 5225. Section 34(a) of the Lanham Act provides that the Court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of" a trademark owner's rights. 15 U.S.C. § 1116(a).

Federal Rule of Civil Procedure 69 and N.Y. C.P.L.R. § 5222 also govern the enforcement of money judgments in New York federal courts. <u>See</u> <u>Spin Master Ltd.</u>, 463 F. Supp. 3d at 383. Rule 69(a)(1) of the Federal Rules of Civil Procedure provides that "[t]he procedure on execution– and in proceedings supplementary to and in aid of judgment or execution–must accord with the

procedure of the state where the court is located[.]" Fed. R. Civ. P. 69(a)(1). In New York, Section 5222 of the New York Civil Practice Law and Rules permits a judgment creditor to serve a restraining notice on a judgment debtor which prohibits the judgment debtor from "mak[ing] or suffer[ing] any sale, assignment, transfer or interference with any property in which [it] has an interest," except in limited circumstances. N.Y. C.P.L.R. § 5222(b). Thus, once a defendant is found liable and a money judgment is rendered against it, a district court sitting in New York has the power to restrain that defendant's assets. See e.g., ^_^Warm House^_^ Store, 2019 WL 418501, at *7 (motion for post-judgment asset restraint granted); WowWee Grp. Ltd. v. Haoqin, No. 17-CV-9893, 2019 WL 1316106, at *6 (S.D.N.Y. Mar. 22, 2019) (same).

Courts in this District are divided as to the appropriateness of entering a post-judgment asset freeze and transfer order on a defendant that has defaulted. Many courts in this District have read C.P.L.R. § 5225 to permit a New York district court to restrain a defendant's assets once that defendant has been found liable and a money judgment has been entered against the defendant. See e.g., Off-White LLC v. Baoding Springru Trade Co., Ltd., No. 19-CV-00674 (RA) (JLC), 2020 WL 1646602, at *8-9 (S.D.N.Y. Apr. 3, 2020), report and recommendation adopted by, 2020 WL 3050553 (S.D.N.Y. June 8, 2020) (motion for post-judgment asset restraint granted); WowWee, 2019 WL 1316106, at *6 (same); ^_^Warm House^_^ Store, 2019 WL 418501, at *6-7 (same). In this view, where a plaintiff has requested "an accounting of the Defendants' profits attributable to the infringing activity, equitable remedies such as an asset freeze may be sought as part of an action for an accounting of profits." Baoding Springru Trade Co., Ltd., 2020 WL 1646602, at *8 (citing Gucci Am. Inc. v. Bank of China, 768 F.3d 122, 131 (2d Cir. 2014)); see Tiffany (NJ) LLC v. Forbse, No. 11-CV-4976 (NRB), 2015 WL 5638060, at *3-4 (S.D.N.Y. Sept. 22, 2015). Once a defendant's assets are frozen, courts have then relied on "the authority to issue

injunctive relief under Rule 64 of the Federal Rule of Civil Procedure, § 1116(a) of the Lanham Act, and this Court's inherent equitable power to issue remedies ancillary to its authority to provide final relief." Baoding Springru Trade Co., Ltd., 2020 WL 1646602, at *9 (quoting ^_^Warm House^_^ Store, 2019 WL 418501, at *6); see also Alan Yuan's Store, 325 F. Supp. 3d at 428 (ordering transfer of infringing defendants' frozen assets to plaintiff). Courts order this asset freeze and transfer order to address the concern that, absent this relief, "defendants would have . . . a fourteen-day window [under Federal Rule of Civil Procedure 62(a)] in which to hide their assets." Forbse, 2015 WL 5638060, at *4.

Conversely, other courts in this District have concluded that they "lack[] the power to impose the post-judgment asset restraint and transfer[.]" Spin Master Ltd., 463 F. Supp. 3d at 383; Allstar Mktg. Grp. v. 158, No. 18-CV-4101 (GHW), 2019 WL 3936879, at *3-4 (S.D.N.Y. Aug. 20, 2019); see also Off-White LLC v. 0225XIANGCHUN, No. 19-CV-11626 (KPF), 2020 WL 3618963, at *2 (S.D.N.Y. July 2, 2020) (declining to issue a post-judgment asset freeze and transfer order); WowWee Grp. Ltd., 2019 WL 1375470, at *11 (explaining that the remedy for plaintiffs "concerned about the risk that Defaulting Defendants will dispose of, transfer, or hide their assets," are the "remedies ordinarily applicable to enforcement of judgments of law under Rule 69 and N.Y. C.P.L.R. § 5222").

In Spin Master Ltd., while discussing Plaintiff's request for a post-judgment asset freeze and transfer under Federal Rules of Civil Procedure 64 and 65, and 15 U.S.C. § 1116(a), the Court noted that Rule 69 of the Federal Rules of Civil Procedure and N.Y. C.P.L.R. § 5222 "establish a carefully designed regime that permits a plaintiff to execute on its judgment while also protecting the rights of third parties to the assets that may be used to satisfy that judgment." 463 F. Supp. 3d at 383-84. The Court in Spin Master concluded that the plain language of Rule 69 and C.P.L.R.

§ 5222 "require that notice and an opportunity to be heard be given to third parties in possession of, or who may be entitled to, those assets before transfer[,]" thereby requiring that notice be given to "all persons who have competing, and perhaps superior, interest[s]" in the assets of the Defaulting Defendants. Id. at 384.

Consistent with the Court's reasoning in Spin Master, I recommend denial of Off-White's request for a post-judgment asset freeze and transfer of the Defaulting Defendants' assets. Such an order would give Off-White "rights superior to those of other creditors that Congress did not intend them to have" because "a financial institution holding an asset of a Defaulting Defendant necessary to satisfy the judgment would have to transfer that asset to [Off-White] upon the mere request of [Off-White]" and do so "even if another third party had a superior claim to that asset," "without providing prior notice," and "on pain of contempt if they failed to comply." Id. (citing All-Star Mktg. Grp., 2019 WL 3936879, at *4). Such an order would essentially make Off-White's interests in the Defaulting Defendants' assets superior over any other unknown third party who may also have an interest in those assets, and without any notice or avenue for relief. See id. (noting that the post-judgment freeze and transfer order "would have the Court grant them a blank check and permit them to freeze unknown assets in unknown accounts"); 0225XIANGCHUN, 2020 WL 3618963, at *2 ("Plaintiff's requested relief would require unknown third-party financial institutions to transfer the Defaulting Defendants' assets to Plaintiff, irrespective of whether other creditors held a superior claim to those assets."). Such an outcome is also inconsistent with the language in C.P.L.R. § 5222 and § 5225, which "require that notice and an opportunity to be heard be given to third parties in possession of, or who may be entitled to, those assets before transfer." Spin Master Ltd., 463 F. Supp. 3d at 384.

Accordingly, I recommend denying Off-White's request for a post-judgment asset freeze

and transfer. Nevertheless, to protect against the risk that the Defaulting Defendants may dispose of assets before Off-White can enforce any monetary award, I recommend that Off-White be permitted to execute and enforce a judgment immediately. Federal Rule of Civil Procedure 62(a) provides that "execution on a judgment and proceedings to enforce it are stayed [automatically] for 30 days after its entry, unless the court orders otherwise." Id. at 385. The rule "expressly recognizes the court's authority to dissolve the automatic stay or supersede it by a court-ordered stay," where doing so may protect against a risk that the judgment debtor's assets will be dissipated. Fed. R. Civ. P. 62 advisory committee's note (2018); see also Allstar Mktg. Grp., LLC, 2019 WL 3936879, at *4 n.6. Here, "[l]ifting the automatic stay imposed by Rule 62(a) protects [Off-White's] ability to collect on its judgment while preserving the interests of any unknown third parties." Ali, Jr., 2021 WL 11643206, at *15. Therefore, I recommend that Off-White be permitted to "execute on and enforce the judgment immediately." Spin Master Ltd., 463 F. Supp. 3d at 385.

## CONCLUSION

For the foregoing reasons, I recommend Off-White be awarded $3,525,000 in statutory damages under the Lanham Act, or $75,000 against each of the 47 Defaulting Defendants. I further recommend that Off-White receive post-judgment interest on the amount of the judgment. Additionally, I recommend that Off-White's request for a post-judgment order freezing each Defaulting Defendants' assets and authorizing the transfer of those assets to Off-White be denied, but that Off-White be permitted to execute on and enforce the Court's judgment immediately.

DATED:      New York, New York
            January 24, 2025


_____
VALERIE FIGUEREDO
United States Magistrate Judge


\*                    \*                    \*

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

**Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the Honorable Paul A. Engelmayer. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).**